*In re* WIGENT'S ESTATE.

PARMALEE *v.* WIGENT'S ESTATE.

1. ESTATES OF DECEDENTS—SERVICES—EVIDENCE—VALUE—EXPERT OR OPINION TESTIMONY.

In a suit by one claiming to have performed services for decedent, opinion evidence to prove the value of claimant's services was improperly rejected by the trial court; its weight was for the jury.

2. SAME—NOTE—EVIDENCE.

It was also improper to receive in evidence a note for $25 that claimant had given to decedent and that had been adjusted by the commissioners on claims and offered in evidence by defendant not as a set-off but for other purposes.

3. SAME—IMPLIED CONTRACT—QUANTUM MERUIT.

Where there was no evidence of an express contract entered into by and between decedent and her cousin, who cared for the latter in her last years, to pay for the services, for which he presented his claim against her estate, the trial court committed reversible error in not instructing

the jury that a contract to pay therefor might be implied from the fact that the services were rendered by claimant and accepted by the decedent. Because of the remote relationship between decedent and the claimant, no presumption arose that the services were rendered gratuitously.

Error to Berrien; Bridgman, J. Submitted June 22, 1915. (Docket No. 97.) Decided December 22, 1915.

Albert F. Parmalee presented his claim for services against the estate of Fidelia Wigent, deceased, which was not allowed by the commissioners on claims, and claimant appealed to the circuit court. Judgment for defendant of no cause of action. Claimant brings error. Reversed.

*John J. Sterling,* for appellant.

*Gore & Harvey,* for appellee.

On October 31, 1912, one Fidelia Wigent of Watervliet, Mich., died testate. At the time of her death she was a little over 76 years of age. During the last 2 years of her life she had not enjoyed the best of health, and it was necessary that some one stay with her. In February, 1911, the plaintiff, a cousin of the deceased, and a man at that time about 70 years of age, commenced to live at the house of the deceased. It is nowhere conclusively shown in the record that he was invited to stay there, though such invitation may be inferred from the fact that he remained there until the death of Mrs. Wigent. While there he looked after the deceased as occasion required, and assisted as best he could with the household duties. During the 91 weeks prior to the death of Mrs. Wigent, the plaintiff was at the house continuously except on Friday afternoons and Saturdays, when he went to Hartford to work at his profession as an optician.

Upon her death the estate of Fidelia Wigent was admitted to probate, and commissioners of claims appointed. No provision having been made in her will for compensation for the services rendered by the plaintiff, he presented his claim to said commissioners in the sum of $637, that amount being $1 per day for the time he had been living at her house. The claim was not allowed by the commissioners, and an appeal was taken to the circuit court. Upon the trial in that court a verdict of no cause of action was rendered. Plaintiff now reviews his case in this court by writ of error.

There are some 20 assignments of error which, in substance, may be classified as follows:

(1) Error upon the refusal of the court to permit plaintiff to testify to matters equally within the knowledge of the deceased.

(2) Refusal of the court to permit plaintiff and his witnesses to testify as to the value of the services rendered.

(3) Error of the court in admitting a promissory note given by plaintiff to deceased.

(4) Refusal of court to permit witness Burnside to relate conversation he had with plaintiff.

(5) Errors assigned upon the charge of the court as given.

BROOKE, C. J. (*after stating the facts*). It will be unnecessary to notice in detail each assignment of error. The first, we think, is without merit.

The assignments referred to in the second class above set forth are, in part at least, well taken. We can perceive no reason why the plaintiff should not have been permitted to give testimony as to what he considered his services to be worth. Nor is there any reason why his witnesses, after having qualified by showing their knowledge of what he did, should not have been permitted to give their several opinions as to the value of such services. The admissibility of such

testimony is clear. Its probative force rests with the jury.

The third assignment of error is based upon the ruling of the court admitting in evidence a promissory note for $25 made by the claimant in favor of the decedent, which had been adjusted by the commissioners on claims. In tendering it in evidence, counsel for the estate said:

"I offer this in evidence. I do not offer that as an offset against this claim, but I offer it for other purposes."

Counsel for plaintiff objected to it, saying:

"We object to that on the ground that it is immaterial, irrelevant, and incompetent for any purpose. That they do not offer it as an offset against our claim, and it has been taken care of before the commissioners on claims.

"*The Court:* I don't know that.

"*Mr. Sterling:* The record is here to show it.

"*The Court:* I see where it may be relevant.

"*Mr. Sterling:* The same matter relative to the things he purchased or that we claim he purchased.

"*The Court:* The objection is overruled."

Whereupon the note was received in evidence. We are of opinion that the admission in evidence of this note was erroneous, although perhaps it cannot be said that it was prejudicial. However, upon the new trial we think it should be excluded.

The principal ground for reversal is based upon the voluntary charge of the court. That charge was in part as follows:

"Before the plaintiff, or rather the claimant, can recover there must be shown to you an agreement between the parties that this claimant was to be paid for his services, and there must be evidence that the services were to be paid for by the decedent. Not necessarily perhaps evidence that they came together and made a formal, what we call a formal agreement, but you must find there was an agreement that this woman was to pay this man for his services either, as the law

says, an express or an implied agreement, and your verdict or your judgment must be based upon the evidence actually in the case as you have heard it here in the court. And you must further be able to find from the evidence what services plaintiff performed, and the value of such services actually performed by him and under all the evidence and circumstances in the case that there was an arrangement or agreement that he should be so paid.

"On the other hand, the defendant estate, so near as I can gather, claims that he lived there, perhaps had his board, with the understanding that all services that he rendered were to be gratuitous, that is, that he would not be paid for his services, and that the services so rendered were purely voluntary.

"Now no one is bound to pay for volunteer services rendered under such circumstances which do not fairly indicate an expectation of reward.

"Now, if whatever services this gentleman, claimant, rendered, if any were rendered, were done and performed under circumstances justifying the belief that no charge was intended to be made there was no liability to pay. And if the relations of the parties, the nature of the services, and all the pertinent facts show that the plaintiff was not working for money, that there was no expectation of being paid, the plaintiff cannot recover. And it is necessary for a plaintiff in a suit of this kind to establish everything necessary to a recovery, that the plaintiff must show his right to recover by a fair preponderance of the evidence, must show the work that he did and its value, and to show what understanding the defendant had of the matter, and that she received a benefit of it.

"The matter is for you gentlemen to decide under the rules as I have given them to you. If you find that the claimant is entitled to recover you can allow such amount as in your judgment the services that he rendered were actually worth. If you find there was no ·agreement and that the claimant did not intend to charge, your verdict will be against the claimant, that is, you find for the estate."

After retiring for a time, the jury returned to court, when the following occurred:

"*The Court:* Gentlemen, I am advised that you wish the advice of the court upon some matters if it is a question of law.

"*A Juror:* Yes, sir.

"*The Court:* Have you agreed upon a verdict?

"*A Juror:* No; we have not agreed on a verdict. There is a little question, your honor, that we are undecided on and we wish a little instruction from you. The question is that: Can other evidence of an understanding or contract than written or verbal be considered by the jury in determining the claim? The second is: May an implied agreement be considered by the jury?

"*The Court:* Upon that point you are to take all the facts and circumstances, the facts that appear in court before you, and from all those facts and circumstances determine whether there was or was not an implied agreement. Is that sufficient? You may take all the facts and circumstances. You may determine whether there was or was not an implied agreement.

"*A Juror:* It is not necessary that the contract be a written or verbal contract?

"*The Court:* That is a little difficult to answer. It is not necessary it should be a written contract, but there must have been an agreement between the parties, as I stated in my suggestion to you this morning; there must have been an agreement between the parties. There was no agreement in writing. Therefore it must have been verbal, but you have the right to determine whether or not there was such an agreement —implied agreement—by considering all the facts and circumstances, and the testimony, and you must determine, as I said before, what substantially that agreement would be, and that you find what the man did, and what he agreed to do, and what substantially that implied agreement would mean."

We are of opinion that this charge, taken as a whole, is properly subject to criticism. While the evidence fails to disclose an express verbal contract between the claimant and the decedent, under the authorities in this State, it is clear that such a contract may be presumed from the fact that the services were rendered by the claimant and were accepted by the de-

cedent. In the early case of *Sword* v. *Keith,* 31 Mich. 247, at page 257, Mr. Justice CHRISTIANCY, speaking for the court, said:

"It is objected that there was no evidence tending to show any such promise on the part of Keith. For myself, I am inclined to think this objection well founded; but my brethren take a different view, and think the circumstances shown would authorize the inference that both parties acted upon the understanding that such services would continue to be rendered by Keith, and that this would be equivalent to a promise; and it cannot be denied that there is some force in this view of the case."

In the case of *In re Williams' Estate,* 106 Mich. 490 (64 N. W. 490), it is said:

"Under all the facts and circumstances, the jury were justified in concluding that the services were performed in reliance upon the contract, and were accepted in recognition thereof. The proof does not rest alone in parol, but upon the subsequent conduct of the parties as well—performance on the one part, and acceptance on the other."

See, also, *Sammon* v. *Wood,* 107 Mich. 506 (65 N. W. 529), and *In re Abel's Estate,* 173 Mich. 93 (138 N. W. 325), where Mr. Justice STONE, speaking for the court, said:

"It is not essential to a recovery by a child for services rendered to a parent that a formal contract be established in relation thereto; but if the facts and circumstances attending the performance of the work and in its acceptance are sufficient to rebut the presumption that the services were gratuitous, and to authorize the inference that both parties acted under the understanding that they were to be paid for, the parent is liable."

In all these cases the services were rendered by a child for a parent, where a presumption arises that the services were rendered gratuitously. No such presumption arises in the case at bar, because of the re-

189 Mich.—33.

mote relationship between the claimant and the decedent. It is, of course, possible that the claimant rendered the services in question gratuitously. A careful examination of the record, however, fails to disclose any testimony bearing out this view.

The judgment is reversed, and a new trial ordered.

KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.

The late Justice MCALVAY took no part in this decision.