*In re* REZMER'S ESTATE.

1. EXECUTORS AND ADMINISTRATORS — CLAIMS AGAINST ESTATES — PROOF REQUIRED—CONTRACTS—PRESUMPTION ARISING FROM FAMILY RELATION.

To recover for services rendered decedent against the decedent's estate, it is unnecessary to prove an express contract but there must be proof at least of an implied contract and in case claimant is a member of the family there must be enough in the record to overcome the presumption arising from the family relation.

2. SAME—SERVICES FOR PARENT—QUESTION FOR JURY.

In son's proceeding against estate of decedent to recover money loaned and for services performed in operating latter's farm, evidence *held*, sufficient to present a question of fact for determination of the jury as to whether there was a contract between decedent and plaintiff.

3. LIMITATION OF ACTIONS—CONTRACTS FOR SERVICES FOR PARENT.

In son's proceeding against estate of his late father to recover money loaned and for services performed where jury found contract between decedent and plaintiff and there was evidence that payment was not to have been made until the death of deceased, the statute of limitations would not begin to run until such decease (3 Comp. Laws 1929, § 13976).

4. PARENT AND CHILD—CONTRACTS FOR SERVICES—PRESUMPTIONS— MEMBERS OF SAME HOUSEHOLD.

To enable a child to recover for services rendered a parent it is not essential that a formal contract be entered into but if the evidence rebuts presumption that performance of the work was gratuitous and authorizes inference that both parties acted under the understanding they were to be paid for, the parent is liable and the fact that the parent and child were not members of the same household weakens the presumption and may be regarded as giving support to other facts tending to establish an implied contract.

5. EXECUTORS AND ADMINISTRATORS—CLAIMS AGAINST ESTATE—EVI-
DENCE—QUESTION FOR JURY.

In son's proceeding against father's estate to recover for serv-
ices performed in operation of latter's farm after latter sought
to have plaintiff, a married man residing in a city, leave his
work and conduct farm, evidence of statements by father to
other children in presence of plaintiff that father would pay
plaintiff in the end *held*, sufficient to present question of
whether services were gratuitous as a question of fact for the
jury.

Appeal from Bay; McCormick (James L.), J.
Submitted January 19, 1938. (Docket No. 139, Cal-
endar No. 39,902.) Decided April 4, 1938.

In the matter of the estate of Peter Rezmer, de-
ceased. Chester Rezmer filed his claim for services.
Claim allowed. Executor appealed to circuit court.
Verdict and judgment for plaintiff. Executor ap-
peals. Affirmed.

*William L. Hellerman,* for plaintiff.

*Hubert J. Gaffney,* for defendant.

McALLISTER, J. On an appeal from probate to
circuit court plaintiff had verdict and judgment of
$1,732 for money loaned to, and services performed
for, his deceased father. The executor of the estate
of decedent appeals and asks for a reversal of the
judgment on the ground that plaintiff's claim was
barred by the statute of limitations (3 Comp. Laws
1929, § 13976) ; and that there was no evidence of a
contract between plaintiff and decedent.

When plaintiff was 21 years old, in 1912, deceased
suffered an accident causing injury to his spine.
Plaintiff, his son, thereupon managed decedent's
farm for approximately seven years until the time

when the other children of decedent had grown up. Plaintiff afterward went to Bay City where he secured a job.

In 1923, four years after plaintiff had left the farm, the deceased came to see him and induced him to leave his job and come back and manage the farm. He acceded to his father's request and worked on the farm during the following four years.

Plaintiff's father died November 12, 1935. Three days prior to that time he informed his daughter that he owed plaintiff money and that he wanted to pay him. Deceased expressed the fear that he himself might be obliged to go to the poor house, and he did not know how long he was going to live, but that "he was going to pay him in the end." Decedent also told two of his other sons in the presence of plaintiff during the month before he died, that he owed plaintiff money but that he couldn't pay him at that time because he might live for a long time. Three years before, in 1932, deceased told his son Edward that he was indebted to the plaintiff and stated:

"I want to pay Chester for the work and the money he let me take. Of course, I couldn't pay him now, because I might live 20 years or more, and I don't know when I will die."

On other occasions deceased told members of his family that as long as he lived he would "hang on to the money, but he said he wanted Chester to be paid."

*In re Pierson's Estate,* 282 Mich. 411, was a case in which this court reversed a judgment in favor of four claimants ranging in age from 7 to 16 years, against the estate of their uncle, for services performed. There was evidence that decedent had repeatedly expressed his gratitude and had mentioned that he would pay claimants some time for what they

had done. However, it was not shown that any such expressions of gratitude were known to any of the claimants. The court held that, under the circumstances and taking into consideration the age of the claimants and their relationship, the statements of decedent did not constitute evidence indicating that there was an understanding between the parties that claimants should be paid for their services.

In *Decker* v. *Kanous' Estate,* 129 Mich. 146, the court reversed a judgment in favor of a daughter who claimed that she was entitled to recover for services performed for her mother under an implied contract. There was some evidence that decedent had stated that her daughter ought to have pay for taking care of her, but the witness who testified to such statement did not understand at the time that the daughter had heard the conversation.

While it is not necessary to prove an express contract in terms, in claims for services against the estates of decedents, there must be proof at least of an implied contract, and in case of services performed by a member of the family, there must be enough in the record to overcome the presumption arising from the family relation. *Decker* v. *Kanous' Estate, supra.*

In *Pupaza* v. *Laity,* 268 Mich. 250, this court held that where a decedent had told various persons that she was indebted to claimant, and that he was to be paid after her death, such statements constituted sufficient evidence to present to the jury for their determination, as a question of fact, whether there was a contract between decedent and such claimant that he was to be paid for his services after her death.

Testimony and evidence presented a question of fact for the determination of the jury in the present

case. Under instructions from the trial court, the jury found that there was a contract between decedent and plaintiff. Because of the fact that there was evidence that payment was not to have been made until the death of deceased, the claim was not barred by the statute of limitations.

"There was some evidence from which the jury might find that the services were not to be paid for until the death of the decedent, and in such case the statute would not begin to run until such decease." *Pupaza* v. *Laity, supra.*

With regard to the presumption that services performed by a child for his parent are gratuitous, it was said in the case of *In re Abel's Estate,* 173 Mich. 93:

"It is not essential to a recovery by a child for services rendered to a parent, that a formal contract be established in relation thereto; but if the facts and circumstances attending the performance of the work and its acceptance are sufficient to rebut the presumption that the services were gratuitous and to authorize the inference that both parties acted under the understanding that they were to be paid for, the parent is liable."

In the case of *In re Hoffman's Estate,* 200 Mich. 464, 472, this court quoted with approval from *Wessinger* v. *Roberts* (syllabus), 67 S. C. 240 (45 S. E. 169), as follows:

"The presumption that services rendered to a mother by a daughter are gratuitous is not of itself destroyed by the fact that they were not members of the same household, yet this fact weakens the presumption, and it may be regarded as giving support to other facts tending to establish an implied contract."

At the time of performance of the services in this case, plaintiff was a married man and did not belong to his father's household. He returned from Bay City to the farm, in response to his father's request, at a time when the other children were leaving the farm. Statements of decedent acknowledging his obligation to his son and expressing an intention that he would pay claimant "in the end" for his services, were made to decedent's other children in the presence of the plaintiff.

There are no suspicious circumstances respecting the testimony of witnesses for the claimant. They were members of the same family and the establishment of plaintiff's claim would be to their disadvantage. Under the evidence, the question of whether the services which plaintiff performed for his father were gratuitous was a question of fact for the jury.

Judgment affirmed, with costs to plaintiff.

WIEST, C. J., and BUTZEL, BUSHNELL, SHARPE, POTTER, CHANDLER, and NORTH, JJ., concurred.